**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:26-cr-00001 (AHA)** |
| | : | |
| **BRIAN J. COLE, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF POST-ARREST DIAGNOSIS INFORMATION OR TO EXCLUDE EVIDENCE AT SUPPRESSION STAGE**

The United States respectfully submits this reply in support of its motion to compel the defendant to produce records and other materials underlying his newly diagnosed Autism Spectrum Disorder (ASD) or to exclude the diagnosis for purposes of suppression. The defendant has confirmed in his opposition that he intends to present his post-arrest ASD diagnosis—*i.e.*, an inherently subjective medical opinion—in support of his suppression theory but does not intend to disclose any details about the opinion or its basis before introducing the evidence. *See* ECF No. 118. At most, the defendant represents that he will disclose the diagnosing doctor's unidentified prior statements on an unidentified date before the hearing, "should he testify." *Id.* at 2. Otherwise, the defendant contends, it is up to the Court to decide what weight to give the diagnosis. *Id.* at 8.

The defendant's apparent effort to avoid scrutiny of the post-arrest ASD diagnosis requires the Court's intervention now, sufficiently in advance of the suppression hearing to permit the government to assess the reliability of the diagnosis. The diagnosing doctor, Dr. Black, is not an ordinary fact witness, and his diagnosis is not ordinary fact testimony. It is inherently expert evidence based on specialized knowledge beyond that of a layperson, and ASD diagnoses in particular rest on subjective clinical judgments about observed deficiencies and impairments—

none of which are known to the government. *See* ECF No. 111 at 8–10. The defendant's curt answer to the government's legitimate concerns—that understanding the nature of the post-arrest diagnosis and its basis are mere "aims" and "what the government's response and rebuttal experts are for," ECF No. 118 at 4—rings hollow when the government and its expert have no information to respond to or rebut. And this dilemma is exacerbated by the centrality of the ASD diagnosis to the defendant's suppression theory, which, according to his motion to suppress, *requires* that the Court "must … measure[]" the allegedly coercive interview "against the backdrop of Mr. Cole's autism and constrained mental faculties," which are not identified. ECF No. 102 at 15; *see* ECF No. 111 at 4–5 (summarizing significance of ASD diagnosis to defendant's suppression theory).

In response to the government's request for "a limited and tailored production of information to permit the government to review and assess the accuracy of this diagnosis," ECF No. 111 at 6–7, the defendant emphasizes what the government already made clear in its motion—that the government is not seeking to compel information at this stage under Rule 16(b)(1)(C) or Rule 12.2. ECF No. 118 at 4–6; *see* ECF No. 111 at 12. The defendant is incorrect, however, that the government has not put forward the basis for its motion to compel and that "[n]o rule reaches these materials at this stage." ECF No. 118 at 5. As the government explained in its motion, evidence—including evidence presented in support of a suppression theory—must be competent and credible or else is irrelevant and should not be relied on. ECF No. 111 at 7–8. For expert evidence like the post-arrest ASD diagnosis, this means considering the evidence's reliability with reference to the principles articulated in *Daubert*[1] and Federal Rule of Evidence 702. *See, e.g.*, *United States v. Banks*, 93 F.Supp.3d 1237, 1247–50 (D. Kan. 2015) (where a party's suppression "theory requires expert testimony for support" and is challenged through a "conditional relevance

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

attack on [the] expert testimony," "the Court must scrutinize the expert testimony under *Daubert* principles (and other indicators of reliability) to determine the appropriate weight it should receive," thereby "perform[ing] a function similar to screening of evidence for conditional relevance under Rule 104(b)").

This Court has recognized that although the rules of evidence do not formally apply in the suppression context, "the principles set forth under Federal Rule of Evidence 702 and *Daubert* ... may be relevant in determining the weight to afford an expert's testimony at a suppression hearing." *United States v. Mickens*, 810 F.Supp.3d 75, 86 n.5 (D.D.C. 2025). In *Mickens*, the Court considered the reliability of a defense expert who "offer[ed] expert testimony on detector dog training, deployment, and reliability" and determined, by reference to *Daubert*-derived factors, that the evidence was sufficiently reliable to consider for suppression purposes. *Id*. But before that defense expert—who was offered to rebut the government's affirmative dog detection evidence—testified in support of the defendant's suppression theory, defense counsel had "notified government counsel that they may call the expert in response to its witness, the canine handler," "provided government counsel with a copy of the expert's CV, which notes his expertise regarding detection dogs," and followed up "with a more fulsome notice consistent with the requirements of Rule 16—although those requirements do not apply—and promptly responded to additional inquiries from government counsel." Resp. to Govt's Opp'n to Expert Testimony at 2–3, *United States v. Mickens*, No. 1:25-cr-00048-AHA, ECF No. 22 (D.D.C. July 8, 2025); *see also id.*, Mot. for Exemption from the Rule on Witnesses at 1, ECF No. 20 (July 1, 2025) (defense counsel summarizing expert's field of expertise, his opinion, and the materials on which he relied in forming his opinion). In other words, the Court in *Mickens* was able to responsibly consider the competence and relevance of the expert testimony in significant part because the details of the

opinion and the basis for it were not a surprise revealed at, or just before, the suppression hearing. That is, the Court was not deprived of the benefit of the adversarial process.

Courts have applied *Daubert* and conditional relevance principles to exclude expert testimony submitted to support suppression. In *United States v. Bentley*, for example, the defendant moved to suppress his statements based, in part, on a polygraph examination, the results of which the defendant intended to offer through an expert polygrapher and his report. NO. 25-CR-20455-MORENO/D'ANGELO, 2026 WL 2836453, at *1 (S.D. Fla. Sept. 9, 2026). The government moved to exclude the polygrapher's testimony, and the district court held a *Daubert* hearing. *Id.* at *1-2; *see United States v. Collier*, 116 F.4th 756, 762 n.5 (8th Cir. 2024) ("We will further assume without deciding that *Daubert* applies to suppression hearings."). Although the court acknowledged that its "gatekeeping function is more relaxed where the judge is serving as the factfinder," it explained that "a relaxed evidentiary standard in a suppression hearing does not relieve the Court of its obligation to conduct an independent inquiry into whether the proposed testimony constitutes admissible expert evidence under *Daubert*." *Id.* at *4; *see also United States v. Petrakis*, No. 3:15-cr-17-J-32JRK, 2016 WL 5341992, at *23 (M.D. Fla. Sept. 15, 2016) (explaining that "the general view is that although expert testimony for a suppression hearing should not be subject to a pre-hearing *Daubert* analysis," "[e]ven at a suppression hearing, the district court must always consider any proffered expert's qualifications and determine, in its discretion, what weight to afford that expert's testimony," and "[i]n making this determination, it may well be that *Daubert* principles are relevant and should be applied" (quoting *United States v. Stepp*, 680 F.3d 651, 669 (6th Cir. 2012)).

The *Bentley* court excluded the polygraph testimony, holding that the polygraph evidence had not been shown to be sufficiently reliable, could not be adequately tested because "[t]here is

no known physiological response to lying" and responses consistent with deception could be caused by various unrelated conditions, there was no known error rate, polygraphs were not generally accepted in the scientific community, and the evidence was unhelpful in determining credibility. *Id.* at *6–7. Thus, the evidence was inadmissible "under *Daubert*, notwithstanding the relaxed evidentiary standard for a suppression motion," and the court excluded the evidence from consideration for purposes of suppression. *Id.* at *8-9. Again, the court was able to discharge its responsibility to rely on competent evidence—and avoid relying on unreliable evidence—because the details and foundation of the expert's opinion were made available to assess their reliability.

These examples illustrate that, even in the suppression context, for a court to consider the reliability of expert testimony and the weight to afford it, the court must have sufficient information and the benefit of adversarial testing. The government in its motion to compel (at 12–13) highlighted the district court's decision in *United States v. Theodorou*, No. 3:22 CR 274, 2023 WL 7386421 (N.D. Ohio Nov. 8, 2023). In that case, even with the disclosure of detailed expert reports in advance of a suppression hearing, the court recognized the "reasonable concerns" that resulted from the government's (and the court's) lack of access to the information underlying the expert opinions concerning the presentation of the defendant's psychological symptoms and how those symptoms bore on the voluntariness of his statements. No. 3:22 CR 274, 2023 WL 7386421, at *1-4. The court compelled production of that information to ensure that the reliability of the expert opinions could be properly understood and considered. *See id.* at *3-4.

The government has asked this Court to, "at a minimum, take the same steps taken by the *Theodorou* court to ensure that any factual findings in this case rest on a competent evidentiary record." ECF No. 111 at 14. But courts have gone farther than *Theodorou*. In *United States v.*

*Ruiz*, the district court granted the government's "motion to compel disclosure of information related to expert witnesses" in advance of the suppression hearing and ordered defense counsel to "immediately furnish to the government the names, resumés and any written reports in their possession of expert testimony to be offered at the suppression hearing" in order to "provide a sufficient basis to challenge on voir dire the qualifications of any experts to proffer expert opinions" and, if the government desired, "to retain opposing expert witnesses." Order, *United States v. Ruiz*, 3:10-cr-00254, ECF No. 75 (M.D. Tenn. Mar. 16, 2011).[2] As the government stated in its motion to compel, it is not asking the Court to go this far. ECF No. 111 at 12. It is simply requesting "a limited and tailored production of information to permit the government to review and assess the accuracy of [the post-arrest ASD] diagnosis." *Id.* at 6–7.

## CONCLUSION

The government respectfully requests that the Court order the defendant to produce the materials identified in its motion to compel or exclude any evidence of the defendant's post-arrest ASD diagnosis for purposes of suppression.

[2] In its successful motion to compel disclosure of information related to expert witnesses for suppression, the government in *Ruiz* stated that its request was "not out of the ordinary" and argued that "[t]he requested expert information is necessary to enable the United States to adequately prepare for the suppression hearing. Without this information, the United States cannot effectively respond to the defendants' evidence" because it cannot "conduct a proper voir dire" or "effectively cross-examine and respond to the expert's opinions," "decide whether or not to oppose the proffered testimony on grounds that the witness lacks sufficient qualifications," "research whether the government should seek to employ an expert of its own," or "evaluate any potential flaws in the experts' testing procedures or the data underlying the experts' opinions." Gov't Mot. to Compel Disclosure of Info. Related to Expert Witnesses at 3, *United States v. Ruiz*, 3:10-cr-00254, ECF No. 67 (M.D. Tenn. Mar. 16, 2011). The motion to compel went so far as to argue that Rule 16 should "appl[y] with equal force to expert testimony the defendants seek to introduce only at a suppression hearing." *Id.* at 4. Coincidentally, the government counsel in *Ruiz* who advanced these arguments is one of the defendant's lawyers in this case. *Id.* at 5 (motion signed by J. Alex Little).

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Charles R. Jones*
CHARLES R. JONES (D.C. Bar No. 1035541)
STUART D. ALLEN (D.C. Bar No. 1005102)
JOCELYN BALLANTINE (CA Bar No. 208267)
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530