**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cr-00001 (AHA) |
| | ) | |
| BRIAN COLE, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL THE GOVERNMENT TO ELECT BETWEEN COUNTS ONE AND TWO**

## INTRODUCTION

In its three previous indictments, the government charged Mr. Cole with one count of transporting explosives to the DNC and RNC. The other charges also combined the DNC and RNC conduct in one count. In the operative Third Superseding Indictment, the government decided to separately charge the conduct as to the DNC and RNC, splitting each count into two. The government's response to Mr. Cole's multiplicity motion makes clear that when the government separated the counts, it did not realize that splitting the one transportation charge into two separate charges created a multiplicity issue.

When Mr. Cole raised the multiplicitous counts in his motion to elect, the government refused to concede the issue. Instead, the government argues that Mr. Cole can be charged in two counts for one act of transportation based on: (1) the

pronoun "it" in § 844(d), (2) a House Report describing the bombing problem of 1970, and (3) an out-of-circuit dogfighting case.

The government block quotes a full page of legislative history that says nothing about charging a defendant with multiple counts for one act of transportation—or anything close to it. Instead, the history discusses the scourge of bombings in 1970. Yet, even after Congress's response to the bombings by enacting § 844 and over fifty years of post-enactment case law, the government cites to no case where it has ever charged a defendant with multiple counts for one act of transporting multiple explosives at the same time. The defense is likewise unable to locate such a case. It appears that Mr. Cole is the only defendant the government has ever charged with multiple counts for one act of transporting multiple explosives at the same time, in the same trip. The government, however, has charged all other defendants similarly situated to Mr. Cole with one count of transportation of explosives—because that is what the law requires, and it is what the government did the first three times it charged this case.

The government's fallback request that the Court defer the issue until after trial fares no better. At least two courts in this District have explained that multiplicity should be cured prior to trial because: (1) "at least some of the harm from multiplicitous prosecution occurs during the course of the trial itself, and not merely at sentencing," *United States v. Phillips*, 962 F. Supp. 200, 202 (D.D.C. 1997) (Friedman, J.) (citation and internal quotation marks omitted); and (2) "when an indictment charges numerous offenses *arising from the same conduct* it may falsely

suggest to a jury that a defendant has committed not one but several crimes." *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992) (Greene, J.) (emphasis added and citation and internal quotation marks omitted). Both dangers exist here.

The Court should resolve the multiplicity issue now and order the government to elect between Counts One and Two of the Third Superseding Indictment.[1]

**ARGUMENT**

**I. The Government Has Not Shown—And Cannot Show—That Congress Clearly Made Each Explosive a Separate Unit of Prosecution.**

The government frames the question as which reading of § 844(d) is "best" in light of its text, history, and purpose. Dkt. 122 at 3–4. But that is not the test in a unit-of-prosecution case. When two counts charge the same statute, the question is whether Congress "fix[ed] the punishment for a federal offense clearly and without ambiguity." *Bell v. United States*, 349 U.S. 81, 84 (1955). If Congress did not, "doubt will be resolved against turning a single transaction into multiple offenses." *Id.* This is because any "ambiguity should be resolved in favor of lenity." *Id.* at 83.[2] The government's response never grapples with any of this.

---

[1] The Court need not reach the multiplicity issue because Counts One and Two should be dismissed as untimely. *See* Dkt. 108; Dkt. 110 at 1 n.1. If, however, the Court finds that the charges are timely, one count should be dismissed as multiplicitous.

[2] The government addresses lenity only in a footnote, arguing that the statute is not "grievous[ly]" ambiguous. Dkt. 122 at 11 n.5 (citing *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). But *Barber* concerned the BOP's calculation of good-time credit, not the allowable unit of prosecution.

Mr. Cole's motion does not make a general rule-of-lenity argument. The presumption against multiplying offenses is the Supreme Court's rule in *Bell*: mere "doubt" or "ambiguity" (*Bell*, 349 U.S. at 83, 84) is enough to resolve a multiplicity

The D.C. Circuit has cited *Bell* with approval for the unit-of-prosecution inquiry. *United States v. Weathers*, 186 F.3d 948, 952 (D.C. Cir. 1999) (citing *Bell* as "holding that interstate transportation of two women on same trip in same vehicle constitutes single violation of [the] Mann Act"). Because § 844(d) prohibits the transportation of "*any* explosive" and Mr. Cole is alleged to have transported two explosives on the same trip and in the same vehicle, Counts One and Two are multiplicitous under *Bell*.

### A. The Pronoun "It" Does Not Make Each Explosive a Separate Offense.

The government's textual argument comes down to one word. Because § 844(d) refers to "any explosive" and then to the knowledge or intent "that *it* will be used" to cause harm, the government says that Congress chose "each individual explosive" as the unit of prosecution. Dkt. 122 at 4–5 (emphasis added). The government's "it" argument fails for four reasons.

*First*, the pronoun is required by grammar, not chosen to set a unit of prosecution. Having made "any explosive" the object of the verb, Congress had to refer back to it with a singular pronoun. Replacing "it" with "they" would have been ungrammatical. *Compare* § 844(d)'s text of "Whoever transports or receives . . . *any explosive* with the knowledge or intent that *it* will be used to kill . . ." (emphasis added) *with* "Whoever transports or receives . . . *any explosive* with the knowledge or intent that *they* will be used to kill . . . ." The pronoun that grammar dictates says nothing

---

question in the defendant's favor—not "grievous ambiguity or uncertainty" (*Barber*, 560 U.S. at 488 (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998))).

about how many offenses Congress intended. That is especially so because Congress has told courts how to read the singular: "unless the context indicates otherwise," "words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1.

*Second*, *Bell* itself answers the government's argument. The Mann Act punished whoever "knowingly transports in interstate or foreign commerce . . . any woman or girl" for an immoral purpose. *Bell*, 349 U.S. at 82 (citation omitted). The object, "any woman or girl," was singular, just as "any explosive" is singular in § 844(d). The Supreme Court held that Congress had not clearly made each woman transported a separate unit of prosecution. *Id.* at 83–84. The government's effort to distinguish *Bell* as involving a statute "without an additional singular reference to the object of the offense," Dkt. 122 at 9–10 n.1, also fails. The full statute *Bell* construed contains the very feature the government says was missing: an additional singular reference to the object of the offense, in this case, "such woman or girl": "Whoever knowingly transports . . . any woman or girl for the purpose of prostitution . . . or with the intent and purpose to induce, entice, or compel *such woman or girl* . . . ." 18 U.S.C. § 2421 (1952) (emphasis added). The *Bell* opinion omitted portions of the full statute that were not relevant to the Court's review. The full statute at issue in *Bell*, which the government's brief ignores, defeats the government's argument. *See* Dkt. 122 at 9–10 n.1.

*Third*, the D.C. Circuit has declined to treat singular language as fixing the unit of prosecution. In *United States v. Johnson*, the statute punished possession of

"a weapon of mass destruction," and the court held that "that language covers both IEDs possessed by Johnson," so only one conviction could stand. 4 F.4th 116, 122–23 (D.C. Cir. 2021).

*Fourth*, the government's reliance on the other subsections of § 844 backfires. Dkt. 122 at 5. Subsections (g), (h), and (i) use the indefinite article "an explosive." Those provisions show where the unit of prosecution actually comes from: the prohibited act. Section 844(i) punishes damaging or destroying property, so it naturally runs property by property, and the government has charged it that way here (Counts Three and Four). Mr. Cole does not challenge those counts on multiplicity grounds. Section 844(d) punishes a different act, transportation. The indictment alleges only one act of transportation, and therefore only one transportation count can survive.

### B. *Hammond* and *Casillas-Montero* Rest on Item-Specific Purposes That § 844(d) Lacks.

The government argues that § 844(d) is like the firearm-registration statute in *Hammond v. United States*, 77 A.3d 964, 967–68 (D.C. 2013), rather than the weapon-of-mass-destruction statute in *Johnson*. Dkt. 122 at 10–11. But the government's own account of *Johnson* explains why it is not. The definite article in *Hammond* mattered because it "embodie[d] a fundamental difference in the statutory purpose": the registration scheme existed to identify, track, and "collect information on each firearm possessed in the District." *Johnson*, 4 F.4th at 122 (citation and internal quotation marks omitted). Every unregistered gun was its own regulatory failure. The statute in *Johnson*, by contrast, treated dangerous weapons "as a class," with "no

comparable indication . . . of a distinct legislative purpose connected to each possessed item." *Id.* at 122–23.

Section 844(d) is like the *Johnson* statute, not the *Hammond* one. Nothing in § 844(d) is tied to individual items: there is no registration or tracking. Its intent element concerns what the defendant knows or intends about how explosives will be used, not the identity of any particular device. The statutory definition confirms that "explosive" describes a class of materials, not a countable unit. It includes "gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes . . . , detonators, and other detonating agents, smokeless powders," and "any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units." 18 U.S.C. § 844(j). Many of these are bulk substances that cannot be counted one by one. Under the government's theory, a person who drives a crate of a hundred sticks of dynamite across a state line commits a hundred ten-year transportation felonies, and a single pipe bomb could support several counts, because its powder filler and any fuze or detonator are each an "explosive" under § 844(j). Nothing in the text or history suggests Congress intended that result, and *Bell* forbids reading it in without a clear statement.

The government's indictments show how easily the singular covers the plural. The Second Superseding Indictment charged that Mr. Cole transported "*an explosive*, that is, two 'pipe bombs' and their respective components." Dkt. 64 at 1 (emphasis added). Counts One and Two in the operative Third Superseding Indictment likewise describe each device as "*an explosive*, that is, *a 'pipe bomb'* and its respective

components." Dkt. 106 at 1–2 (emphasis added). The government, writing in the statute's own words, used "an explosive" to describe two bombs and all of their parts. That is exactly how the Dictionary Act, 1 U.S.C. § 1, says the singular should be read.

The government's primary authority, *United States v. Casillas-Montero*, an out-of-circuit dogfighting case, does not change the analysis. 152 F.4th 306 (1st Cir. 2025). The case involved a *Hammond*-type, item-specific purpose: the Animal Welfare Act's express statement of policy, which "evinces Congress's central aim: the humane care and treatment of animals," and the fact that "each animal experiences suffering individually." Dkt. 122 at 7 (quoting *Casillas-Montero*, 152 F.4th at 320). Each dog trained for fighting suffers injury as an individual being; an explosive does not. And *Bell* shows that even when each transported object is a separate human victim, the Supreme Court will not multiply transportation offenses without a clear statement. 349 U.S. at 83–84. If two individuals carried on one trip were one Mann Act offense, two explosive devices carried on one trip are one § 844(d) offense.

### C. The Legislative History Says Nothing About the Unit of Prosecution.

The government's claim that the legislative history "emphatically establish[es]" a per-explosive unit, Dkt. 122 at 1, does not hold up. The full-page House Report it quotes describes a national epidemic of bombings and the need for stronger federal controls. *Id.* at 6 (quoting H.R. Rep. No. 91-1549 (1970)). It does not mention units of prosecution, the number of counts, or devices at all. The statistics it cites count "bombings," "attempted bombings," and "threatened bombings," which are incidents, not explosives.

A general purpose of suppressing dangerous conduct is not a clear statement about the unit of prosecution. That is the point of *Bell*, which warned that lenity in this setting applies "not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct." 349 U.S. at 83. *Johnson* applied that principle to a statute aimed at precisely the threat the government invokes here. The weapon-of-mass-destruction provision construed there is part of the District's Anti-Terrorism Act of 2002, and the case involved two improvised explosive devices. *See Johnson*, 4 F.4th at 118, 122. Even so, the D.C. Circuit found "no comparable indication . . . of a distinct legislative purpose connected to each possessed item" and allowed only one conviction. *Id.* at 122–23. The government offers no reason why Congress's general concern with bombings in 1970 should produce a different result.

### D. Separate Intended Targets Do Not Create Separate Transportation Offenses.

The government repeatedly hedges its argument with the phrase "especially where, as here, the bombs were transported . . . with the intent to attack separate and distinct targets." Dkt. 122 at 1; *see id.* at 4, 7, 11. That hedge reveals the weakness of its reading. Section 844(d) prohibits a single act, transportation, done with knowledge or intent that the explosive will be used to damage "*any* building, vehicle, or other real or personal property." The target appears only in the mental-state element, and a single transportation intended to damage several buildings constitutes one violation.

Mr. Cole's position is consistent with his duplicity challenge to former Count Four, which the government cites against him. Dkt. 122 at 12. That motion addressed a different offense: attempted malicious destruction of property under the D.C. Code, where the property, its owner, and its $500,000 value are all elements of the prohibited act. Dkt. 95 at 10–11. The principle is the same in both motions: the unit of prosecution follows the prohibited act. A destruction offense is counted building by building because destroying a building is the prohibited act. A transportation offense is counted trip by trip because transporting is the prohibited act. That is why Mr. Cole has not, at this time, challenged the paired, building-specific counts under § 844(i), 18 U.S.C. § 2332a, and the D.C. Code—the other counts in the operative indictment—on multiplicity grounds.

**E. The Government's Charging History and Practices Confirm, At a Minimum, That the Statute Is Ambiguous and Should Be Resolved in Mr. Cole's Favor.**

The government calls Mr. Cole's reliance on its prior indictments an "estoppel-type argument." Dkt. 122 at 12. It is not. Mr. Cole does not argue that the government is bound by its earlier charging choices. He argues that those choices are evidence of how the statute reads. For nine months and three indictments, the government read § 844(d) to cover the transportation of both devices in one count. Dkt. 31 at 1–2; Dkt. 39 at 1; Dkt. 64 at 1.

In other cases, the government has charged a single count of § 844(d) for the transportation of multiple explosives. *See, e.g., United States v. Kikumura*, 918 F.2d 1084, 1093–95 & n.6 (3d Cir. 1990) (one § 844(d) count where defendant was arrested

en route to New York while transporting three bombs in his car), *abrogated on other grounds by United States v. Fisher*, 502 F.3d 293, 305 (3d Cir. 2007); *United States v. Wynn*, No. 8:22-cr-00028, Dkt. 12 at 1, Dkt. 1 at 2 (D. Neb. 2022) (one § 844(d) count for approximately thirteen incendiary devices transported to Nebraska); *United States v. Vandenberg*, No. 2:25-cr-02558, Dkt. 20 at 1 (D.N.M. 2025) (one § 844(d) count for transportation of six fireworks with 60 grams of gunpowder each and seventy-two other fireworks); *United States v. Balat*, No. 1:26-cr-131-VSB, Dkt. 13 at 4, 14 (S.D.N.Y. 2026) (one § 844(d) count where defendants transported two improvised explosive devices from Pennsylvania to New York); *United States v. Rahimi*, No. 1:16-cr-00760-RMB, Dkt. 18 at 5–6 (S.D.N.Y. 2016) (one § 844(d) count where defendant transported two IEDs and placed them at two locations in the same neighborhood); *United States v. Shahzad*, No. 1:10-cr-00541, Dkt. 10 at 7–8 (S.D.N.Y. 2010) (one § 844(d) count where defendant "drove a sport utility vehicle containing explosive and incendiary devices to Times Square").

Section 844(d) was enacted over fifty years ago. The government cites no case where it has ever charged a defendant with multiple counts for one act of transporting multiple explosives at the same time. Undersigned counsel were unable to locate such a case. It appears that Mr. Cole is the only defendant the government has ever charged with multiple counts for one act of transporting multiple explosives at the same time, in the same trip.

## II. The Court Should Decide the Question Now and Require The Government to Elect Before Trial.

The government's fallback position is that the Court should let both counts go to the jury and sort out multiplicity after the verdict. Dkt. 122 at 12–15. The Court should decline to do so.

*First*, the government itself asks the Court to decide the merits now. Its primary request is that the Court "deny the motion on the merits." Dkt. 122 at 1, 4. The question is one of pure statutory construction, it appears on the face of the indictment, and it is fully briefed. Rule 12 required Mr. Cole to raise it before trial precisely so that the Court could correct the defect "without disrupting an ongoing trial." *Weathers*, 186 F.3d at 953 (quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992)); *see* Fed. R. Crim. P. 12(b)(3)(B)(ii); *United States v. Doost*, 3 F.4th 432, 437 (D.C. Cir. 2021). If the Court agrees that Counts One and Two charge one offense, there is no good reason to send to the jury a count the Court already knows must be vacated.

*Second*, the government's "same evidence" argument conflates the harm Mr. Cole faces at trial with multiplicitous counts. *See* Dkt. 122 at 13–14. Every multiplicitous pairing rests on the same evidence. That was true in *Phillips*, where a single loaded firearm supported both the firearm and ammunition counts, and the court still required the government to elect before trial. 962 F. Supp. at 201–02. It was also true in *Clarridge*, where both perjury counts rested on the same testimony. 811 F. Supp. at 705–06, 714. The harm those courts identified was the additional counts. An indictment that "may falsely suggest to a jury that a defendant has committed not one but several crimes," inviting "[c]ompromise verdicts or

assumptions that, with so many charges pending the defendant must be guilty on at least some of them." *Id.* at 702 (citation and internal quotation marks omitted); *see Phillips*, 962 F. Supp. at 202 ("[A]t least some of the harm from multiplicitous prosecution occurs during the course of the trial itself, and not merely at sentencing.") (citation and internal quotation marks omitted).

*Third*, the government's point that the jury will already consider paired counts for each device under §§ 844(i) and 2332a and the D.C. Code, Dkt. 122 at 13–14, supports election rather than undermining it. Those six building-specific counts already give the government every opportunity to present its theory that Mr. Cole targeted two buildings, and Counts Five and Six alone carry a maximum of life imprisonment. 18 U.S.C. § 2332a(a). Requiring election on the § 844(d) counts would cost the government no evidence, no theory, and no meaningful sentencing exposure. The government does not identify any prejudice it would suffer. On the other side, the second § 844(d) count would add a duplicate charge to an indictment that already presents the jury with eight counts arising from a single evening, and it would do so for the one offense in the indictment that is about the trip rather than the targets, likely confusing the jury. Where election costs the government nothing and protects the integrity of the verdict, the balance favors election.

## CONCLUSION

The Court should order the government, within 30 days, to elect whether it will proceed on Count One or Count Two, and should dismiss the other count.

Dated: November 2, 2026

Respectfully submitted,

/s/ *John R. Glover*
J. Alex Little
Zachary C. Lawson
John R. Glover
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Tel: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co

Bill Abely (*pro hac vice*)
LITSON PLLC
399 Boylston St, Suite 650
Boston, Massachusetts 02116
bill@litson.co

Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)
John M. Shoreman
DC Bar #407626
HUMANITY DIGNITY AND RIGHTS LLC
3480 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole, Jr.*

## CERTIFICATE OF SERVICE

I certify that on November 2, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ John R. Glover*
John R. Glover