U.S. Department of Justice

Jeanine Ferris Pirro
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D St., N.W.*
*Washington, D.C. 20530*

August 31, 2026

**VIA USAfx (Production)**
**VIA Email (Letter)**

John M. Shoreman, jms@mcfaddenshoreman.com
Mario Bernard Williams, mwilliams@hdrattorneys.com
John Ross Glover, jr@litson.co
Joseph Alex Little, IV, alex@litson.co
Zachary Carter Lawson, zack@litson.co

**Re: *United States v. Brian J. Cole Jr.*, Case No. 26-cr-0001 (AHA)**
**Response to July 8, 2026 and August 7, 2026 Correspondence**

Dear Counsel:

We write in response to your July 8, 2026 and August 7, 2026 letters requesting additional discovery or clarification or identification of discovery already provided. Where we reference particular electronic communications and serials, those are references to previously produced materials unless otherwise noted. ***All materials produced under cover of this letter are designated as sensitive pursuant to the Protective Order (ECF No. 12).***

1. **Cell-Site Data and 2025 Re-Analysis**
   a. The 2025 re-analysis record: the EC, 302, and/or FD-1057 documenting the November 2025 identification of Mr. Cole, including what was re-examined and how Mr. Cole was connected to the January 5 data.
      i. *The opening EC, 174A-WF-4160602, serial 1, documents the identification of Mr. Cole.*
      ii. *The phone records collected as part of the investigation were re-examined.*
      iii. *Mr. Cole's phone number was identified within the T-Mobile dataset.*

b. The custom decoding program written to decode the T-Mobile data — the "new computer program" publicly described as the breakthrough that led to Mr. Cole's identification: the source code, build and version history, documentation, and validation and testing materials, including any error rate, verification, or reliability analysis and any peer or technical review; and the identity, employing agency, and CAST/CART assignment of the law-enforcement officer who authored it, together with that person's relevant training, qualifications, and prior casework, and whether the program has been used, validated, or disclosed in any other matter.
   i. *The CAST methodology is attached to a supplemental electronic communication ("EC") being produced under cover of this letter in response to this request.*

c. Records of the undercover operation referenced in connection with the "program."

   Clarification: "undercover operation" and "program." Both terms refer to the account in Gurman & Barber, "How a Tech-Savvy Officer Finally Cracked the Jan. 6 Pipe-Bombs Case," WSJ (Dec. 15, 2025), the same source cited at ¶1.q. "Program" is the custom decoding software the article describes a CAST/CART officer as having written to decode the T-Mobile timing-advance data (cross-referenced at ¶1.b). "Undercover operation" refers to the same article's report that agents also ran an undercover operation. To be clear, the program itself is not in discovery — its production is what we seek at ¶1.b — so there is no serial or Bates number to cite for the program.

   i. *The CAST methodology attached to a supplemental EC being produced under cover of this letter in response to this request is responsive to your inquiry regarding the "program."*
   ii. *The "undercover operation" referred to in the WSJ article at issue was related to a different person of interest, for whom we have provided information in discovery already (Subfile 10), not Mr. Cole. A summary of the "undercover operation" and its results can be found in 266O-WF-3696484, serial 19, which is attached to a supplemental EC being produced under cover of this letter in response to this request.*

d. The 2022 re-analysis materials in native form: the "T-Mobile Reanalysis Instructions," the Review Log, and the device-specific 2022 comments for IMSI [redacted].
   i. *The record of the 2022 re-analysis of IMSI* [redacted] *is documented in serial 174A-WF-4160602, serial 114.*

e. The CAST PowerPoint circulated by email attachment in late October 2025.
    i. *The CAST PowerPoint is attached to a supplemental EC being produced under cover of this letter in response to this request.*

f. The Rule 902(11) certification for the 795-device DNC Timing-Advance dataset (the certification produced covers the tower dump and predates the Timing-Advance file).
    i. *The T-Mobile certification is attached to a supplemental EC being produced under cover of this letter in response to this request.*

g. The basis for the azimuth change at tower 126187: who changed Sector B's azimuth from 345° to 90°, when, and on what basis, including the underlying January–February 2021 drive-test data.
    i. *The bases for the azimuth change were documented in 174A-WF-4160602, serial 139.*
    ii. *The drive test data for tower 126187 is attached to a supplemental EC being produced under cover of this letter in response to this request.*

h. The cable-swap inquiry for tower 40225 / WDC085B: T-Mobile's response to the CAST request to check for a cable or sector swap, and any record addressing the FBI location estimate that plots opposite the stored azimuth.
    i. *The T-Mobile response was documented in 174A-WF-4160602, serial 139.*
    ii. *The drive test data for tower 40225/WDC085B is attached to a supplemental EC being produced under cover of this letter in response to this request.*

i. The antenna sheet for the cell carrying the 8:23–8:24 session: azimuth, horizontal beamwidth, downtilt, and site latitude/longitude (cell 144340 at ~295° or 40225 at ~255°).
    i. *The CAST tower lists are attached to a supplemental EC being produced under cover of this letter in response to this request.*

j. Confirmation of the cell identity assigned to the 8:24 session in the government's detention memorandum, Dkt. 17, at page 6, reconciled against the produced ECI/eNB data.
    i. *The CAST tower lists are attached to a supplemental EC being produced under cover of this letter in response to this request.*

k. Per-session network data for the x9370 line on January 5, including serving cell-site, and any PCMD/NELOS data, with a statement of what survives retention.
    i. *The T-Mobile records for x9370 are documented within the tower dump, data session and area search records.*
    ii. *NELOS is not applicable to T-Mobile.*
    iii. *No cell site data was obtained for x9370.*

l. The serving/originating cell for the 8:43 p.m. voice call, and the serving cell for both calls to [redacted] (12:20 p.m. and 8:43 p.m.).
   i. *The records associated with [redacted] were documented in serial 174A-WF-4160602-GJ, serial 35. The government did not obtain cell site data.*

m. The Google geofence returns specific to Mr. Cole.
   i. *Mr. Cole's known identifiers were not identified in the Google geofence search warrant returns.*

n. The Sprint 2703(d) order detail: the 24 nationwide locations referenced in the order.
   i. *The records are maintained in the 266O-WF-3366725-2703 subfile, serial 17, physical 1A12.*

o. The underlying Google geofence/reverse-location returns, the commercial ad-tech geolocation returns (Cuebiq, InMarket, Skyhook, Veraset), and the raw Sprint/AT&T/Verizon cell-tower-dump returns (not summaries) underlying the POI and AOI masters.
   i. *The Google geofence search warrant returns were documented in 266O-WF-3366725, serials 571, physical 1A599 and serial 961, physical 1A1002.*
   ii. *The Cuebiq subpoena returns were documented in 266O-WF-3366725-GJ, serials 12, 269, 539, and 873. Serials 539 and 873 are attached to a supplemental EC being produced under cover of this letter in response to this request.*
   iii. *The inMarket subpoena returns were documented in 266O-WF-3366725-GJ, serials 155, 260, 516 (physical 1A793), 530, 591, 604, 757. Serials 530, 591, and 757 are attached to a supplemental EC being produced under cover of this letter in response to this request. Physical 1A793 is being produced under cover of this letter in response to this request*
   iv. *The Skyhook subpoena returns were documented in 266O-WF-3366725-GJ, serials 4, 251, 515 (physical 1A791). Physical 1A791 is being produced under cover of this letter in response to this request*
   v. *The Veraset subpoena returns were documented in 266O-WF-3366725-GJ, serials 94, 279, 616.*
   vi. *The Verizon tower dump search warrant returns were documented in 266O-WF-3366725, serial 238, physical 1A225.*
   vii. *The AT&T tower dump search warrant returns were documented in 266O-WF-3366725, serial 236, physical 1A223.*

viii. *The Sprint tower dump search warrant returns were documented in 266O-WF-3366725, serial 240, physical 1A228.*

p. The source for the quoted "new and specifically tailored algorithms" and "opaque to investigators" statement: author, form, and date.

i. *The "source" is unknown.*

q. All communications between the government (including the FBI, CAST/CART personnel, the U.S. Attorney's Office, or any other Department of Justice or Executive Branch component) and any journalist, reporter, or other representative of The Wall Street Journal — including but not limited to Sadie Gurman and C. Ryan Barber, the bylined authors of "How a Tech Savvy Officer Finally Cracked the Jan. 6 Pipe-Bombs Case" (Dec. 15, 2025) — concerning this case, the T-Mobile cell-site data, the custom decoding program described in that article, or the circumstances of Mr. Cole's identification and arrest, together with any related internal communications, notes, or authorizations for such disclosures.

i. *To date, we have identified certain emails between the FBI Office of Public Affairs and the WSJ that are attached to a supplemental EC being produced under cover of this letter in response to this request.*

ii. *Without prejudice to our future response or objection, we are continuing to investigate this item insofar as whether there are responsive materials within the U.S. Attorney's Office or the Department of Justice.*

r. All records concerning the prior characterization of the T-Mobile cell-site data as "corrupted" or otherwise unusable — including the basis for any representation to that effect (see, e.g., the June 2023 congressional testimony describing provider data as corrupted), any communications with T-Mobile regarding the readability or integrity of the data, and any record reconciling that characterization with the government's subsequent ability to decode the same data.

Clarification: "corrupted" T-Mobile cell-site data. The characterization traces to the June 14, 2023 letter to Director Wray quoting the House Judiciary Committee's transcribed interview of former WFO ADIC Steven D'Antuono, describing a gap in which one provider's data for that day was corrupted and could not be searched. D'Antuono's testimony references T-Mobile but states he could not recall which provider claimed its data was corrupted. Read against that record, our request at ¶1.r is more precisely stated as directed to the corrupted cell-site data, and we so clarify it.

i. *T-Mobile data was not and is not corrupted.*

ii. *A summary of the AT&T "data corruption" issue is documented in 266O-WF-3366725, serial 3470.*

2. **Capital Ale House Records and Egress/Geolocation Evidence**
    a. The complete Capital Ale House merchant subpoena return, and the case agent's December 9 and December 11 emails assessing the order.
        i. *Information contained in 174A-WF-4160602-GJ, serial 93.*
        ii. *Supplemental emails are attached to a supplemental EC being produced under cover of this letter in response to this request.*
    b. Egress evidence for Mr. Cole and the asserted video vehicle: toll/E-ZPass records for Mr. Cole and for the asserted video vehicle; Mr. Cole's cell site/CSLI and device geolocation on the egress corridor; vehicle telematics; and out-of-D.C. LPR returns (Fairfax County/VSP/Arlington/broader MPD) on the I-66/Route 50/I-395/I-495 corridors.
        i. *E-Z pass records are contained in 174A-WF-4160602-GJ, serial 44.*
        ii. *No cell site data was sought or received for Cole's devices.*
        iii. *No vehicle telematics data was obtained for Mr. Cole's vehicle.*
        iv. *The complete LPR holdings are documented in 266O-WF-3366725, serial 2204.*
3. **Cole's Phone, Interrogation, and Arrest Records**
    a. The complete, final Samsung S10e extraction and review logs (not only the "initial review" referenced in the SITREP).
        i. *The complete extraction of Mr. Cole's Samsung S10 phone (1B50) was provided along with the scoped report.*
        ii. *The review of the phone was documented in 174A-WF-4160602, serial 193 and 241.*
    b. Any pre-recording statements or 302s, and any communications regarding interrogation strategy.

        <u>Clarification</u>: "pre-recording statements or 302s." This refers to any statements by Mr. Cole, and any FD-302s or notes memorializing them, made before the audio/video recording of the December 4, 2025 custodial interview began—at or after arrest, during transport, and during booking and processing, including any spontaneous or pre-Miranda statements — together with any communications concerning interrogation strategy. The recorded interview itself is identified as 1A0000164 (25-MJ-276), produced in Production 1 (Dec. 8, 2025); the pre-recording statements and 302s are the not-yet-produced category defined against it.

        i. *Recorded statements and 302s have been provided and one additional recording made during transport of Mr. Cole, 1D18, is being produced under cover of this letter in response to this request.*

   ii. *Interview questions prepared are being produced under cover of this letter in response to this request.*

c. Any competency or psychological assessment accompanying the produced Miranda and prompt-presentment waivers.

   i. *No competency or psychological assessments were conducted.*

d. The Apple Watch collected during the December 4 search and any associated Apple account records.

   i. *The Apple Watch (1B12) was never processed or reviewed. It was returned to Mr. Cole's mother on February 25, 2026 (174A-WF-4160602, serial 229).*

   ii. *No Apple records were sought.*

**4. Identification and Footwear Evidence**

a. The FBI's shoe-size methodology (the "Shoe Measurements" folder contains two files with no interpretive report).

   i. *The FBI Digital Evidence Unit shoe measurement report was documented in 266O-WF-3366725, serial 631 and serial 933.*

   ii. *FBI Digital Evidence Unit files are being produced under cover of this letter in response to this request.*

b. Both photogrammetry shoe-length reports: the March 9, 2021 report (12.37″ ± 0.5; examiner Imel; 266O-WF-3366725/HQQ210305004) and the superseded February 9, 2021 report (13.4″ ± 0.5; HQQ210208001/Serial 631), and the basis for both "known" sidewalk references (35.75″ and 33.75″) and the conversion from outsole length to shoe size.

   i. *The FBI Digital Evidence Unit shoe measurement report was documented in 266O-WF-3366725, serial 631 and serial 933. These serials are attached to a supplemental EC being produced under cover of this letter in response to this request.*

   ii. *FBI Digital Evidence Unit files are being produced under cover of this letter in response to this request.*

c. The underlying video frames used for the shoe measurement (e.g., the "Ivy St. North" 7:30 p.m. clip).

   i. *FBI Digital Evidence Unit files are being produced under cover of this letter in response to this request.*

d. Any document comparing the estimated size of the suspect to Mr. Cole's actual size.

   i. *DMV reports documenting Mr. Cole's height are in 174A-WF-4160602, serial 1.*

   ii. *The FBI's height analysis of subject was documented in 266O-WF-3366725, serial 329. This serial is attached to a supplemental EC being produced under cover of this letter in response to this request.*

e. Any gait or other biometric comparison run on Mr. Cole or on any other person of interest.
   i. *No gait analysis was conducted on Mr. Cole.*
   ii. *Gait or gait analyses are discussed in the following 266O-WF-3366725 serials:*
      1. *556*
      2. *687*
      3. *1759*
      4. *1792*
      5. *1919*
      6. *2355*
      7. *2817*
      8. *2988*
      9. *3313*
      10. *3500*
      11. *3501*
      12. *3550*
      13. *3555*
   iii. *Serials 1759, 1792, and 3555 are attached to a supplemental EC being produced under cover of this letter in response to this request.*

f. The eyewitness-description records, including operational updates noting eyewitnesses who described the suspect as a white male.
   i. *All eyewitness 302s were provided from the case file.*
   ii. *At least the following 266O-WF-3366725 serials document eyewitness interviews:*
      1. *36*
      2. *316*
      3. *374*
      4. *799*
      5. *822*
      6. *858*
      7. *936*
      8. *947*
      9. *1038*
      10. *1077*

*11. 1108*
*12. 1131*
*13. 1132*
*14. 1288*

iii. *The operations updates are attached to a supplemental EC being produced under cover of this letter in response to this request.*

**5. Device and Bomb Forensics**

a. The quantitative powder analysis: the quantity of energetic material in each device, or a statement that quantity could not be determined.

i. *The FBI lab reports regarding powder analysis were documented in 266O-WF-3366725, serials 131, 143, 149, 301. The FBI lab file was produced as part of Production 2. These serials are attached to a supplemental EC being produced under cover of this letter in response to this request.*

b. Any record of the on-site decision to conduct a second water-cannon disruption rather than transport to Quantico; the post-incident bomb technician reports; and identification of the FBI representative who directed the second disruption.

i. *The USCP reports regarding the disruption of the devices was documented in 266O-WF-3366725, serials 46 and 2755.*

ii. *The FBI response to the RNC and DNC post incident was documented in 2660-WF-3366725, serials 190 and 204. Serial 204 is attached to a supplemental EC being produced under cover of this letter in response to this request.*

iii. *The "second disruption" of the RNC device was documented in 266O-WF-3366725, serial 2755.*

iv. *Materials obtained from the USCP were produced in Productions 4 and 5.*

c. The latent-print and DNA examination reports for the devices.

i. *The Latent Print report is documented in 266O-WF-3366725, serial 61.*

ii. *The DNA Report was documented in 266O-WF-3366725, serial 388.*

iii. *The FBI Laboratory materials were produced in Productions 2, 3, and 4. Serials 61 and 388 are attached to a supplemental EC being produced under cover of this letter in response to this request.*

d. Forensic examination of the recovered timer(s): make, model, and any lot/component detail, with comparison to the item purchased by Mr. Cole (Walmart item 007239700900).

i. *The FBI Laboratory report for the components was documented in 266O-WF-3366725, serial 149 and 301.*

ii. *The purchase records for the Mainstay Walmart Timer, which include Mr. Cole, were documented in 266O-WF-3366725, serial 3616.*

iii. *Serials 149, 301, and 3616 are attached to a supplemental EC being produced under cover of this letter in response to this request.*

e. Chain-of-custody records for the device components, and any FBI record addressing the erased DNC overnight footage.

i. *The Chain of Custody documents for each of the components are attached to a supplemental EC being produced under cover of this letter in response to this request.*

ii. *DNC footage that has been collected has been provided.*

**6. Vehicle and License-Plate-Reader (LPR) Evidence**

a. The white Ford Focus renter identity: Serial 115 and Serial 117 (the Avis facility interview of [redacted]) in full, and the Avis rental agreement for VA plate [redacted].

i. *The rental agreement and identity of the renter was identified in 266O-WF-3366725, serial 115.*

ii. *The interview of the renter was documented in 266O-WF-3366725, serial 117.*

b. The full VOI1 (gray Subaru) canvass 302s: Serials 420, 328, 522, 527, 619, 623, and 627 in full (for example the index for Serial 328 cuts off at "TANG provided the f"); and any document identifying or excluding VOI1 as a specific vehicle or plate, including as plate [redacted].

i. *All the captioned serials are complete records and are reattached to a supplemental EC being produced under cover of this letter in response to this request.*

ii. *A possible identity of VOI1 was documented in 266O-WF-3366725, serials 420 and 557.*

c. The full VOI2 file: the second vehicle of interest (sightings ~8:19–8:20 p.m. and ~9:38 p.m.), including all associated 302s, route reconstruction, and any identification analysis.

i. *No stand-alone subfile was opened for VOI2.*

ii. *VOI2 information was referenced in 266O-WF-3366725, serial 2204. An additional document relating to this item is attached to a supplemental EC being produced under cover of this letter in response to this request.*

d. The complete per-plate LPR return for VA plate [redacted] across all dates and locations, including the Constitution Ave NW/15th read (8:47 p.m., 1/5) and the K St NW/27th read (7:13 a.m., 1/6): with reader IDs, GPS coordinates, timestamps, and any images; and the underlying vehicle specific plate query that

generated those reads (which Serial 201 states was not incorporated into the produced master).

i. *The analysis of vehicle bearing license plate* [redacted] *was documented in 174A-WF-4160602, serial 203.*

ii. *LPR data associated with license plate* [redacted] *was identified in 266O-WF-3366725, serials 616, 689, 1888, 2204. Serial 1888 is attached to a supplemental EC being produced under cover of this letter in response to this request.*

e. A full-holdings LPR search for the four plates [redacted], [redacted], [redacted], and [redacted] across MPD/VSP/Arlington/Fairfax County for 1/5–1/6/21 (the produced set reflects only three readers).

i. *MPD was the only source of LPR data received for 1/5 – 1/6.*

ii. *LPR data for license plate* [redacted] *was documented in 266O-WF-3366725, serial 2204.*

iii. *No LPR data was identified for* [redacted] *was identified.*

iv. *LPR data for license plate* [redacted] *was documented in 266O-WF-3366725, serials 616, 689, 1888, 2204. Serial 1888 is attached to a supplemental EC being produced under cover of this letter in response to this request.*

v. *LPR data for* [redacted] *was documented in 266O-WF-3366725, serials 1888, 2204. Serial 1888 is attached to a supplemental EC being produced under cover of this letter in response to this request.*

f. The excluded LPR holdings identified in Serial 201: the NC/DE/PA citywide MPD captures; any Virginia-filtered citywide capture; the 8:16–8:20 p.m. Independence & 3rd four-minute report; Serial 616/1A644 readings; and the vehicle-specific plate queries stated to be "not incorporated" into the master.

i. *MPD was the only source of LPR data received for 1/5 – 1/6.*

ii. *The LPR holdings are documented in 266O-WF-3366725, serial 2204.*

g. The complete LPR photographs for Serials 616, 689, and 1218, and confirmation whether the photographs beyond the "first 200" for Serial 1218 were ever collected or produced.

i. *The LPR holdings maintained by the FBI, to include images, are documented in 266O-WF-3366725, serial 2204.*

h. Other-jurisdiction and out-of-master LPR returns: VSP/Arlington/P WC/PG/NTIC/NCR returns; the broader MPD holdings referenced as "positive but not 1/5–1/6"; and the source reads behind FR4241 (I-295 S/B, 9:48 p.m.) and UPC5689 (4th/Tingey SE, 6:13 p.m.).

i. *MPD was the only source of LPR data received for 1/5 – 1/6.*

ii. *The LPR holdings maintained by the FBI, to include images, are documented in 266O-WF-3366725, serial 2204.*

i. The FBI 302s that Serial 201 identifies as defining the LPR collection scope ("as described in the referenced 302's").

i. *The referenced 302s are identified as 266O-WF-3366725, serials 616, 689, 1218.*

j. The VOI canvass video: the VOI1 grand-jury video (Oracle, Wells Fargo, Bank of America, Homewood Suites); any pending or uncollected canvass video; and the identified missing footage for 8:15–8:25 p.m. (LOC / Cannon House).

Clarification: "identified missing footage for 8:15–8:25 p.m." The source is the Master Timeline spreadsheet the government produced in Production 4 (FBI SharePoint Materials / Timeline / Archive). The "VOI1 ROUTE" tab states: "Missing footage. Only provided footage of POI1 walking. Need video from 8:15 to 8:25pm from same source or Cannon House. 36:37-36:39 (minutes into the video)."

i. *The video collected was checked in as 1B16, 1B17, 1B18 and 1B19. 1B17 has been previously produced. 1B16, 1B18, and 1B19 are being produced under cover of this letter in response to this request.*

k. The underlying camera feeds: the USCP/MPD/Library of Congress/Ring camera feeds cited in the timeline (specific camera numbers, e.g., 4471, 4472, 3171, 809, 810, 799, 763, 766, 1501, 3179, 3502, 5061, 703), not merely the summary timeline.

i. *The video collected was checked in as 1B16, 1B17, 1B18 and 1B19. 1B17 has been previously produced. 1B16, 1B18, and 1B19 are being produced under cover of this letter in response to this request.*

l. The "white 4-door hatchback" work: the LPR/camera checks for a white 4 door hatchback referenced in the POI#1 tasking note, and any resolution of that descriptor.

Clarification: the "POI#1 tasking note." This is a one-page internal investigative to-do list for POI#1, produced at #1267.1, file path PO1GrayHoodie//Archive.POI1 Identifiers, captioned "PIO#1" (a transposition of "POI#1"). Item 6.l refers to the note's entry directing an MPD LPR/camera check for a white 4-door hatchback associated with POI#1. Item 10.e refers to the note's entry directing a coordinated MAC-address/Wi-Fi canvass of the RNC, DNC, and Capitol Hill Club networks. As to both, #1267.1 is the source of the reference; the deficiency is the absence of the returns of the LPR/camera work and any resolution of the hatchback descriptor (6.l), and the network logs and MAC-address returns

from the three-network canvass (10.e). We ask that the government produce those returns or state its position as to each, including, if a workflow was never completed, some resolution of what became of it.

i. *A "white hatchback" with possible tag* [redacted] *was identified in 266O-WF-3366725, serial 1211.*

m. Authoritative vehicle records: Ohio BMV title/registration for the white 2014 Ford Focus SE (VIN [redacted]; Ohio plate [redacted]), including status as of 1/5/21; VA DMV/title records for the Kerkhoff Subaru(s); and confirmation whether the Ohio and Virginia records reflect the same individual.

i. *DMV records for Ohio plate* [redacted] *were requested and returned negative results, as documented in emails attached to a supplemental EC being produced under cover of this letter in response to this request.*

ii. *DMV information for KERKHOFF is documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 5.*

iii. *Further DMV information was received for* [redacted] *and is attached to a supplemental EC being produced under cover of this letter in response to this request.*

n. Any materials bearing on the identity of POI1 and POI2; the materials underlying the association or non-association of Mr. Cole with VOI1, VOI2, POI1, or POI2; and the Serial 203 blue-Nissan analysis in full.

i. *The FBI maintained subfiles for POI1 and POI2 which were provided in discovery. Further, "POI1" is a reference to the previously unknown pipe bomb subject referenced throughout the case file.*

ii. *The FBI investigation has determined Mr. Cole is POI1.*

iii. *The FBI investigation has determined Mr. Joseph Watson is POI2.*

iv. *The FBI has found no information to associate Mr. Cole with VOI1 or VOI2.*

v. *The full analysis regarding the blue Nissan is documented in 174A-WF-4160602, serial 203. The FBI has found no information that Mr. Cole was associated with the blue Nissan identified in serial 203.*

**7. Surveillance Video of the RNC and DNC Pipe-Bomb Locations**

a. All surveillance and closed-circuit-television (CCTV) video depicting the Republican National Committee and Democratic National Committee Headquarters and their immediate vicinity—including the locations where the pipe bombs were placed and all approaches to those locations—for the continuous period from approximately 7:30 p.m. EST on January 5, 2021 through the discovery of the devices on the afternoon of January 6, 2021. This request extends to footage from every source within the government's possession, custody, or

control, including FBI-collected video, U.S. Capitol Police and Metropolitan Police Department cameras, DNC and RNC building and business security cameras, pole cameras, and any private or third-party cameras, in native format with metadata—not excerpts, clips, or compilations. The defense requests the complete footage regardless of whether it depicts the defendant, so that the defense may independently assess every person who was present at, approached, or passed the placement locations throughout the full period.

*i. The video collected was checked in as 1B16, 1B17, 1B18 and 1B19. 1B17 has been previously produced. 1B16, 1B18, and 1B19 are being produced under cover of this letter in response to this request.*

**8. Records Concerning Shauni Kerkhoff and Daniel Dickert**

***a. Device extractions and forensic completeness***

i. The complete GrayKey full-file-system extraction of Kerkhoff's iPhone 12 Mini (model A2176, S/N[redacted], IMEI [redacted])—the SHA-256-verified master image on DEWFMaster_15860973 (Item 1B81) and the archive tapes (Item 1B83), together with the AXIOM portable case provided to the DMX and CAIR units. Because this was a full-file-system acquisition, the government possesses the complete recoverable universe of data on the device, including messages and attachments (including deleted but-recoverable), call logs, contacts, calendar, notes, voice memos, and email; photographs and videos with EXIF GPS and timestamps; the iOS location stores (Significant Locations, cached cell/Wi-Fi positions, Maps history); Safari and browser history and cached search terms; third-party application databases; joined Wi-Fi and Bluetooth history; keychain credentials; the iOS "knowledge"/device usage timelines; and health and motion data. This extraction shall include all native attachment files referenced in the produced January 5–6, 2021 message thread from Kerkhoff's extraction, in native format with intact metadata (including EXIF) and with hash values and source-file information: IMG_9808.png (Jan. 6, 6:18:59 a.m. EST); IMG_3628.jpeg (Jan. 5, 5:11:14 p.m.); IMG_3623.MOV (Jan. 5, 3:44:22 p.m.); IMG_4283.PNG and IMG_4284.PNG (Jan. 5, 10:22:06 a.m.); and IMG_1647.png, IMG_6762.png, and IMG_8051.png (Jan. 5, approximately 6:26 a.m.); together with any additional attachments referenced in the thread. All reside under private/var/mobile/Library/SMS/Attachments. This metadata is material: the one image the defense possesses from Kerkhoff's phone (IMG_3611)

carries embedded GPS/location data from January 4, 2021, so any image captured during this period may likewise carry location data. *Serial 52.*

1. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

ii. The AXIOM portable case and the underlying geolocation and artifact output for the January 5, 2021 window—not the summary — so that the defense may independently assess the bases for the conclusions that the device reflected "minimal activity" and "no geolocation," and whether any 2021 data survived on a 2025 extraction.

1. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

iii. The File System Events and Unified Logs, reprocessed and produced. These categories were excluded from the AXIOM parse (Initial Processing) but contain device-activity timestamps; the government's "minimal activity / no geolocation" conclusion was reached without them. The raw data resides on the master image.

1. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

iv. Written confirmation that the examiner searched the correct interval. The examination was set to UTC. The window of interest— 7:30 to 8:30 p.m. EST on January 5, 2021—corresponds to approximately 00:30 to 01:30 UTC on January 6, 2021. Please confirm that the examiner searched 00:30–01:30 UTC and not 7:30 8:30 UTC.

1. *We confirm the agent searched 00:30–01:30 UTC. A supplement to 266O-WF-3366725-SHAUNI_KERKHOFF, Serial 40 is attached to a supplemental EC being produced under cover of this letter in response to this request.*

v. The full extraction of PSR-1's (Daniel Dickert (hereinafter "Dickert")) iPhone 12 Pro (S/N [redacted], IMEI [redacted]), beyond the nine files selected by Dickert and his counsel to provide to the government, or the government's basis for taking only a consent handoff — including the native "DEWF-CONSENT iPhoneFiles" submitted to the NVRA Evidence Control Center and to SA Huie. *Serials 74, 52.*

1. *A full extraction of Dickert's phone was not obtained.*
2. *The files extracted from Dickert's phone were produced on June 30, 2026.*

vi. Any extraction of Dickert's prior iPhone 7 (S/N [redacted], IMEI [redacted]), including the native 7:37 p.m. "Bella" video (IMG_3636.MOV) presently located only as a single screenshot. *Serial 52.*

1. *The FBI does not have an extraction of Dickert's prior iPhone 7.*
2. *The files extracted from Dickert's phone were produced on June 30, 2026.*

vii. Kerkhoff's iPhone 7 Plus (S/N [redacted], IMEI [redacted]) — the device that captured IMG_3611 produced by the government, which bears embedded GPS coordinates: the forensic extraction reports and chain of custody if it was seized or imaged, and its disposition if it was not. *Serial 74.*

1. *The FBI does not have extractions of Kerkhoff's previous phones.*
2. *Per 266O-WF-3366725-SHAUNI_KERKHOFF, serial 62, Kerkhoff indicated that she no longer has possession of the device she had in January 2021. Kerkhoff indicated that she traded in her old phone.*

viii. Confirmation whether a U.S. Capitol Police–issued iPhone was assigned to Kerkhoff, and whether that device was identified, preserved, and extracted. In light of SA [redacted] finding that the iPhone 12 Mini "was not the one being used during this time period" and Officer [redacted] account, the USCP-issued device was plausibly her active device during the relevant period. *See Serial 26 (FD-302, USCP Ofc. [redacted] 11/7/2025).*

1. *The FBI investigation has determined Kerkhoff did not have a USCP-issued phone in January 2021.*
2. *The emails from USCP indicating she did not have a USCP phone will be documented in the supplemental EC in response to this request.*

***b. Location evidence***

i. The iOS Team Awareness Kit ("ITAK" or "TAK") location tracks for the USCP-issued phone for January 5–6, 2021. TAK position ("CoT") reports are stored server-side under a configurable retention policy and are replayable and exportable to KML/GPX, so the tracks may reside on a USCP or FBI-accessible TAK Server even in the absence of the relevant device. The defense requests: (a) the ITAK/TAK tracks for that device on the night of January 5–6, 2021; (b) USCP's TAK Server retention and archiving policy for the relevant period, to establish whether 2021 tracks survive; and (c) whether Kerkhoff was issued or wore any other device (e.g., an Apple Watch) that logged location or motion, including any call, text, and location records for a USCP work-phone number. *Serial 26; CART/AXIOM analysis report.*

1. *The FBI investigation has determined Kerkhoff did not have a USCP-issued phone in January 2021.*

ii. 10.The Verizon grand jury subpoena and returns for the line ending [redacted] — the digital 1A attached to Serial 30, comprising Grand Jury subpoena #GJ20251107136668 (served on Verizon via VSAT by SA Hennessey on November 8, 2025) and Verizon's returns (received November 10, 2025): subscriber and account records, device/IMEI history, and all call detail records; and confirmation whether any historical cell-site data was requested or produced, and, if not, whether a Section 2703(d) order or warrant was sought. *Serial 30.*

1. *The Verizon subpoena returns were enclosed in the 266O-WF-3366725-SHAUNI_KERKHOFF, serial 30.*
2. *The FBI did not request historical cell site data.*
3. *The FBI did not request a 2703(d) order.*

iii. To the extent the Serial 30 returns are incomplete, full Verizon subscriber, call-detail, and device history for [redacted] for December 2020 through January 2021, to identify the handset/IMEI actually active during the window (Apple registration data cannot establish active use). *#36002.1.*

Clarification: what indicates the Serial 30 returns are incomplete. Verizon's response to the November 7, 2025 subpoena is referenced in the FBI file but was not produced to us; its absence is what indicates the returns provided are incomplete. The underlying process is the November 7, 2025 subpoena for [redacted], window December 24, 2020 through January 21, 2021. See 2660-WF-3366725-SHAUNI_KERKHOFF, Serial 30.

1. *The FBI has no reason to believe the Verizon records provided in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 30 were incomplete.*

iv. Any connected-device / NumberShare (or equivalent) provisioning on the account, to resolve whether either Apple Watch (the Nike+ 38mm and the Series 4 40mm, each listed as GPS-only in #36079.1) was cellular-enabled. *#36079.1.*

1. *The Apple records are documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 38.*
2. *The Verizon records are documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 30.*

v. Cell-site/CSLI for the number(s) associated with Kerkhoff (Serial 5) and for the [redacted] line for January 5–6, 2021 (approximately 3:00 p.m. to 8:30 a.m.), or confirmation that none was obtained.

1. *The FBI did not obtain cell site data for telephone numbers associated with Kerkhoff or Dickert.*

vi. Cell-site data for Dickert's numbers, including subscriber and toll records for Dickert's second line, [redacted] (Omnipoint Communications), held March 2013–August 2025; and subscriber identification and records for [redacted] (the number that called Dickert at 6:26 p.m. on January 5). *Serial 10.*

1. *The FBI did not obtain cell site data for telephone numbers associated with Kerkhoff or Dickert.*

***c. Apple productions***

i. The actual iCloud content returns for the non-end-to-end-encrypted categories, together with the legal process authorizing them. #36002.1 reflects Messages in iCloud = Yes, iCloud Photos = Yes, Advanced Data Protection = No (so Apple held the keys), and iCloud Backup = No.

1. *The FBI did not obtain Apple search warrants for Kerkhoff or Dickert.*

ii. The Find My / "devices signed in" data (Find My Friends = Yes per #36002.1), showing which devices were actively signed into the account during the window, as distinct from historical registration.

1. *The Apple returns received were documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 38.*

iii. IP and login logs. The Registration IP is listed "Unavailable," and the AMS billing-profile-create IP is blank with a note that IP is retained approximately 18 months; the defense requests whatever IP data existed closer in time or in other Apple systems. *#36002.1; #36079.1.*

1. *The Apple returns received were documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 38.*

**d. Associated accounts and identifiers**

i. Records, and the underlying legal process, for the linked email accounts identified in #36002.1: [redacted] (also the Apple logon/recovery email in #36079.1), [redacted] and [redacted] *#36002.1; #36079.1.*

1. *The government did not issue legal process relating to these accounts*

ii. Resolution of the eleven "Sign in with Apple" private-relay addresses listed in #36002.1 — that is, the third-party services to which each relay corresponds.

1. *We do not have information about this beyond what is in the Apple returns that were received and documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 38.*

iii. The fuller Google production. #36083.1 is only the Google Payments customer profile; the defense requests the broader Google account records — content, login/IP history, location history, YouTube TV / Android Pay activity, and recovery phone and email — together with any Google/Waze subpoena or preservation returns.

1. *The Google preservation request was documented in 266O-WF-3366725-SHAUNI_KERHKHOFF, serial 13.*
2. *The Google subpoena and return documents were enclosed in 266O-WF-3366725-SHAUNI_KERHKHOFF, serial 9.*
3. *The Waze preservation request was documented in 266O-WF-3366725-SHAUNI_KERHKHOFF, serial 11.*
4. *The Waze subpoena and return documents were enclosed in 266O-WF-3366725-SHAUNI_KERHKHOFF, serials 16.*

5. *All data sought from Google relating to Google and Waze related to Kerkhoff was captured in these serials.*

iv. The full contents of [redacted] — a Google account named for the residence that holds the Blink camera credentials — and identification of its account holder. *#35911.1. 5.*

1. *The FBI has no records regarding* [redacted]

v. All remaining Kerkhoff subpoena and preservation returns referenced in the file not otherwise addressed above: Meta (case #20482263); Snapchat; TransUnion; Garmin; Signal; and Amazon.

1. *All subpoenas, preservations, and returns related to Kerkhoff were enclosed in the 266O-WF-3366725-SHAUNI_KERKHOFF file.*

***e. Camera and pet-service records related to Kerkhoff***

i. Furbo / Tomofun (account [redacted] furbo.com login created April 29, 2024; application tokens dating to 2019): account data, cloud recordings and clips, still captures, and access/event logs for January 5–6, 2021. *#35911.1.*

1. *The FBI did not seek information from Furbo / Tomofun.*

ii. Blink (residence account [redacted] created November 8, 2022): footage and event logs for January 5–6, 2021. *#35911.1.*

1. *The FBI did not seek information from Blink.*

iii. Nest (com.nestlabs.jasper.release): confirmation whether a Nest camera existed in January 2021 versus a recent login (session artifacts date to November 2–6, 2025), and any responsive footage or logs. *#35911.1.*

1. *The Google subpoena return references "Nest" and was enclosed in 266O-WF-3366725-SHAUNI_KERHKOFF, serial 9. The FBI did not seek additional information from Google about Nest.*

iv. Rover (account [redacted] created December 19, 2020): booking history, sitter/walker identities, timestamps, and GPS walk tracks for January 5–6, 2021. *#35911.1.*

1. *The FBI did not seek information from Rover.*

v. Any additional home-camera footage from the residence — the defense understands two interior cameras and one exterior camera were running on January 5, 2021 — to the extent not captured by the Blink, Nest, or Furbo returns above.

1. *The FBI collected no camera footage from the residence.*

***f. Data-broker, VPN, and social-media accounts related to Kerkhoff.***

i. Records reflecting the Optery and NordVPN accounts. The Optery account (s[redacted] created October 24, 2024, modified

October 31, 2025) corroborates the FD-498; the NordVPN account is reflected in device-level tokens spanning 2022 to 2025. The defense further requests the Optery payment records showing who paid to remove Kerkhoff's name and identifiers from public databases in 2020–2021. *#35911.1.; FD-498.*

1. *The FBI did not seek information from Optery or NordVPN.*

ii. Instagram account data for the handles [redacted] (created November 17, 2020) and [redacted] (created January 28, 2022, still active), and records of any social-media accounts deleted in 2020–2021. *#35911.1.; FD-498.*

1. *The FBI did not seek information related to Instagram accounts [redacted] or [redacted]*

***g. Reports, interviews, CIA records, and the polygraph examination***

i. The complete polygraph examination file (November 6, 2025; examiner DiJoseph; Series 1 "Terrorism" result = DI, Deception Indicated): the full audio and video recording of the entire session (from arrival at approximately 2045 through the conclusion of the post-test), including any recording or monitoring by SAs [redacted] and [redacted], who listened to the interview by cellular phone; the polygraph charts and raw physiological data and the native instrument/software case file; the numerical and/or algorithmic scoring; the question-formulation worksheets (relevant, comparison, and irrelevant questions); all pre-test and post-test notes; and the reviewing examiner's (Gundersen) notes and worksheet. Kerkhoff alleges that this examination was a roughly three-hour interrogation during which the breathing tubes were swapped and she was told she "failed," rendering the complete charts, examiner's report, recording, and question set material to the defense. *FD-498*; Compl. & Demand for Jury Trial, *Kerkhoff v. Blaze Media LLC*, No. 1:26-cv-01078-RDA WEF, ¶¶ 134–137, 191 (E.D. Va. filed Apr. 21, 2026).

1. *The KERKHOFF Polygraph report was documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 15, which was produced in Production 4.*
2. *The FBI did not record the polygraph.*
3. *SA [redacted] and SA [redacted] did not take any notes.*
4. *SA [redacted] and SA [redacted] were the only people listening to polygraph.*
5. *To the extent this request seeks "raw polygraph data" for this examination, we object. The FBI uses polygraph examinations as a*

*national security screening technique and has a compelling need to protect specific aspects of that technique from disclosure. The structure, pattern, and sequence of questions, combined with efforts to combat countermeasures, makes the use of the polygraph an effective technique. However, with access to the charts, the question strings, and other notations within the polygraph data, an individual with basic polygraph knowledge could devise training to undermine the FBI's tactics. Additionally, the information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

ii. The FBI's memorialization of PSR-3's statement that he could not rule PSR-2 in or out — any FD-302, electronic communication, email, or notes documenting that statement; the underlying comparison materials (Main Casefile Serials 3550 and 3555). *June 30, 2026 letter (ECF 58-3).*

1. *The statement made by Dr. Nirenberg was made via phone call to SA* [redacted]
2. *The videos provided to Dr. Nirenberg for comparison were provided on June 30, 2026.*

iii. The full 1A attachments to the Dickert interview — the interview notes, the "map of the parking area," and the message screenshots. *Serial 52.*

1. *The interview notes, map, and messages were documented in the 1A section of 266O-WF-3366725-SHAUNI_KERKHOFF, serial 52.*

iv. The FBI's complete work-up of Kerkhoff as a suspect—the "media lead," the November 4, 2025 "The Blaze" article, all tips, leads, and analyses, and the record of the effort to rule her in or out. *FD-498; June 30, 2026 letter; Serial 77.*

1. *The case file 266O-WF-3366725-SHAUNI_KERKHOFF documents the investigative efforts related to Kerkhoff.*

v. Any communications between the government (including the FBI, the U.S. Attorney's Office, or any other Department of Justice or Executive Branch component) and any journalist, reporter, or other representative of The New York Times concerning Shauni Kerkhoff—including any records reflecting information provided to, solicited from, or received

from any such person, and any related internal communications, notes, or memoranda.

1. *Please provide additional details regarding who at The New York Times or what article you are referencing.*

vi. The CIA employment/background records requested by the FBI on 11/7/25; the 11/9/25 voicemail tip; and the 11/8 7-Eleven footage.

1. *The CIA employment request is documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 34.*
2. *The FBI did not obtain CIA employment records for Kerkhoff.*
3. *The voicemail tip is documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 33.*
4. *The surveillance was of Kerkhoff outside a Safeway, not a 7-Eleven. It was documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 49, physical 1A46 and is attached to a supplemental EC being produced under cover of this letter in response to this request.*

vii. The FBI's communications with the CIA concerning this matter, including how the November 6, 2025 interview of Kerkhoff at CIA headquarters was arranged.

1. *The FBI has investigated this subject and has not identified any written communications.*

viii. All versions and drafts of the ODNI memorandum concerning Kerkhoff (referenced in the file in approximately April 2025), and all records of its transmittal. Kerkhoff alleges that an ODNI unit drafted the memorandum, that it was passed as an "unfinished" draft among Trump-administration agencies and the White House, and that it was ultimately shared with the CIA. Compl. ¶¶ 128, 202, 242.

1. *Without prejudice to our future response or objection, we are continuing to investigate this item.*

ix. The complete handwritten and typed notes of the November 14, 2025 USAO interview of Kerkhoff, including AUSA Jocelyn Ballantine's notes.

1. *FBI agents SA [redacted] and SA [redacted] were present in the interview. SA [redacted] took notes. SA [redacted] did not. The FBI has not been able to locate SA [redacted] notes. The produced 302 was prepared in the ordinary course and is accurate to the best of the agents' recollections.*

2. *AUSA Ballantine does not recall taking any notes during the referenced meeting with Kerkhoff and it would have been contrary to her typical practice to have done so.*

x. Dickert's full USCP file (only a USIS Background Investigation Summary has been located).

1. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

***h. Residence and vehicle search; the laptop***

i. CART's on-site review of the Apple laptop (reviewed but not seized during the November 6, 2025 consent search) — any report, preview or triage output, logs, worksheets, notes, screenshots, or partial copies; the laptop's make, model, and serial number; the scope and terms of the review; the legal authority relied upon; and whether either party had any other iCloud-synced computers. *Serial 68.*

1. *The full extent of the FBI's search of the laptop was documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 70:*
   a. *No derivative evidence was created.*
   b. *MacBook Pro, Serial Number* [redacted]
   c. *Consent*
   d. *The FBI system was not connected to iCloud. It is unknown if the MacBook Pro was synced to iCloud.*

***i. Native originals, USCP records, and independent corroboration***

i. The native originals underlying records produced only as screenshots or scans — the native USCP timekeeping records and the complete badge-swipe record for Kerkhoff (all readers, entries and exits — not only the last-out swipe at 3:47 p.m. on January 5 and the first-in swipe at 7:48 a.m. on January 6), duty assignments, radio logs, and any CCTV depicting her on January 5–6, 2021; and the native message data (produced as a scanned printout). This request further includes Kerkhoff's and Dickert's USCP time records for January 5 and 6, 2021, and their native phone records (only a two-day text spreadsheet for Kerkhoff has been located, labeled "UTC+0," running from ~4:39 p.m. EST January 5 to ~12:46 p.m. January 6, with embedded images stripped; nothing comparable has been produced

for Dickert). To the extent USCP holds these records, the defense requests that the government produce them or facilitate their production.

1. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

***j. Vehicle records and Starlink***

i. Title, registration, and ownership history for the Kerkhoff 2020 Subaru Crosstrek (VIN [redacted]; plate [redacted]), and the full Starlink grand-jury subpoena (GJ20251113136829, served 11/13/25; documented at Serial 59) and its return (VIN [redacted]).

1. *The DMV records for KERKHOFF's 2022 Subaru are documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 5.*
2. *The FBI has no records for a 2020 Subaru.*
3. *The Starlink subpoena service and response are documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 59.*

**ii.** The basis for the November 2025 Starlink subpoena: the record or communication in the Kerkhoff subfile that prompted the 11/13/25 grand-jury subpoena on VIN [redacted], the vehicle otherwise being absent from her POI file.

1. *Kerkhoff was previously associated with a Subaru Crosscheck, license plate [redacted]. Fairfax County Police Department reports relating to this item are attached to a supplemental EC being produced under cover of this letter in response to this request.*
2. *In direct communication with Starlink, they indicated that license plate [redacted] was associated with VIN # [redacted].*
3. *The Fairfax County Police Department report regarding license plate [redacted] is attached to a supplemental EC being produced under cover of this letter in response to this request.*

***k. Forensic disk-wipe record***

i. The September 13, 2022 CART disk-wipe log (OpenText/Tableau TX1) recording a one-pass wipe of a 32 GB OCZ Rally2 USB drive, and the surrounding CART forensic file.

1. *The log is digitally attached to 266O-WF-3366725, serial 3615. Serial 3615 is attached to a supplemental EC being produced under cover of this letter in response to this request. We do not know what you are referring to regarding the "surrounding CART forensic file." The disk-wipe log tracks when a digital wipe was performed on a piece of removable media to ensure it was forensically prepared for use.*

**9. FirstNet Records and Law-Enforcement-Device Cross-Reference**

a. The FirstNet/AT&T records: what survives of the January 5 FirstNet/AT&T location data described as lost or corrupted, and confirmation of what still exists (DOJ produced an email chain indicating some FirstNet returns were sent in response to subpoena for January 5 and 6, 2021).

   i. *A summary of the AT&T "data corruption" issue is documented in 266O-WF-3366725, serial 3470.*

b. FirstNet records for Kerkhoff and Dickert: agency-issued work lines and any personal subscriber line or paired Apple Watch.

   i. *The FBI investigation has determined Kerkhoff did not have a USCP-issued phone in January 2021.*

   ii. *Kerkhoff's Verizon phone records were documented in 266O-WF-3366725-SHAUNI_KERKHOFF, serial 30.*

   iii. *The FBI did not request phone records for Dickert.*

c. The underlying records for the 186 numbers of interest and the 51 numbers closed as "law enforcement officers or persons on the exclusion list."

   Clarification: "186 numbers of interest" and "51 numbers closed." The source is the Loudermilk–Massie report, "Four Years Later: Examining the State of the Investigation into the RNC and DNC Pipe Bombs," which states that of 186 numbers of interest the FBI derived from the geofence and cell-tower dumps, 51 were closed as not needing further action because they belonged to law enforcement officers or persons on the exclusion list. The report cites two FBI-drafted memoranda we do not appear to have: Pipe Bomb Investigation 266O-WF-3366725 – Operational Update (Feb. 3, 2021), and the same, Operational Update (Jan. 20, 2021), each described as on file with the Subcommittee.

   i. *The FBI team has not been able to locate Operational Updates discussing "186 numbers of interest" and "51 numbers closed."*

**10. POI Files and Index/Structural Records**

a. A log of POI subfiles reviewed but not produced (39 individualized subfiles produced against a 7,557-file MASTER POI LIST).

i. *The FBI did not open subfiles on all persons of interest.*

b. The abandoned-lead files: the Nike Air Max Speed Turf owner who worked in the area of the crime and drew a documented "deep dive," and the March 2021 advertising-ID (AdID) match for which physical surveillance was tasked, including the resolution of each.

Clarification: the "abandoned-lead files." Both leads are drawn from the Loudermilk–Massie report. The first is the report's description of a person who owned the same rare Nike Air Max Speed Turf sneakers and worked in the area of the crime — the documented "deep dive" — citing a redacted email dated April 21, 2021, 4:39 p.m., on file with the Subcommittee. The second is the report's statement that by March 2021 the FBI matched a single advertising-ID (AdID) to the suspect's video-tracked route and tasked its Special Operations Group to surveil the person behind it, a lead it called significant with no disclosed outcome, citing Pipe Bomb Investigation 266O-WF-3366725 – Operational Update (Mar. 12, 2021), on file with the Subcommittee.

i. *The FBI opened a subfile on* [redacted] *based on information that he owned the Nike Air Max Speed Turf shoes and worked in the general area of the crime. The FBI investigation was documented in case file 266O-WF-3366725-*[redacted]*. We have provided a subfile in discovery already (Subfile 25) relating to* [redacted]

ii. *Please provide additional information regarding the March 2021 AdID match you are referring to by reference to EC or AdID.*

c. A subject-level index of the grand-jury subpoena returns in Production 6 (Bates-stamped, not identified by subject).

i. *The government has provided you with the grand jury subpoenas and corresponding returns related to this investigation. Those materials have been disclosed to you in the same format in which the government possesses the materials, organized by subject and case file serial number. The government declines to reorganize and reproduce the materials as requested.*

d. A camera-by-camera route index (contained in USCP_Police_Cameras.docx and the TTK FacilityInfo spreadsheet on the Genetec system).

i. *We do not know exactly what you mean by a "camera-by-camera route index" but an Excel file which documents the Master Timeline discussing the videos and time frames in detail is attached to a supplemental EC being produced under cover of this letter in response to this request.*

e. The MAC-address/Wi-Fi router canvass returns: the network logs of devices that touched the RNC, DNC, and Capitol Hill Club networks, referenced in the POI#1 tasking note.

<u>Clarification</u>: the "POI#1 tasking note." This is a one-page internal investigative to-do list for POI#1, produced at #1267.1, file path PO1GrayHoodie//Archive.POI1 Identifiers, captioned "PIO#1" (a transposition of "POI#1"). Item 6.l refers to the note's entry directing an MPD LPR/camera check for a white 4-door hatchback associated with POI#1. Item 10.e refers to the note's entry directing a coordinated MAC-address/Wi-Fi canvass of the RNC, DNC, and Capitol Hill Club networks. As to both, #1267.1 is the source of the reference; the deficiency is the absence of the returns of the LPR/camera work and any resolution of the hatchback descriptor (6.l), and the network logs and MAC-address returns from the three-network canvass (10.e). We ask that the government produce those returns or state its position as to each, including, if a workflow was never completed, some resolution of what became of it.

i. *The results of the MAC-address/Wi-Fi router canvass were documented in 266O-WF-3366725, serial 155.*

**11. Financial and Purchase Records**

a. The Home Depot "pipe bomb holdings" record for the 10/23/2020 galvanized cap (Shelby Township, MI) and the stated basis for tying it to Mr. Cole.

i. *The galvanized cap purchase record identified in 10/23/2020 was initially associated with Mr. Cole based on name only (see 174A-WF-4160602, serial 1). Further FBI investigation revealed the purchase of that particular cap on 10/23/2020 was not made by Mr. Cole.*

b. The footwear-channel subpoena returns: the Dick's Sporting Goods return and the Foot Locker records (only one of six charges itemized; the other five represented as purged).

i. *The Dick's Sporting Goods returns are documented in 174A-WF-4160602-GJ, serial 36.*

ii. *The Footlocker returns are documented in 174A-WF-4160602-GJ, serial 121. Footlocker represented that they "purged" data from their systems.*

c. Any subpoena return on the group order of the Nike Air Max Speed Turf model (e.g., the Philadelphia Eagles group order).

i. *The subpoena returns on the "group order" was documented in 266O-WF-3366725-GJ, serial 382.*

d. Financial records for Brian Cole Sr., to the extent they bear on accounts opened under Brian Cole Jr.'s Social Security number.

i. *The financial analysis of Brian Cole Jr.'s account is documented in 174A-WF-4160602, serial 244. The following financial records were obtained for Brian Cole Sr. and documented in the following 174A-WF-4160602-GJ serials:*
   1. *23*
   2. *29*
   3. *30*
   4. *41*
   5. *57*
   6. *61*
   7. *64*
   8. *69*
   9. *70*
   10. *84*
   11. *88*
   12. *96*
   13. *109*
   14. *111*
   15. *117*

ii. *Analysis of financial records indicates that Brian Cole Sr. did NOT open any accounts under Brian Cole Jr.'s Social Security number.*

**12. Inaccessible and Non-Rendering Files**

a. *Attached is a spreadsheet of produced documents and whether or not each was password protected. If the document was password-protected, the spreadsheet notes where the password can be found.*

b. *As to the list of non-rendering files you sent, the passwords provided today will resolve the issues for many of those files. If you continue to request re-production of files already produced, please provide an updated list of files that are not resolved by password that is organized based on priority. We note that when asked for additional information concerning the rendering issues, you informed the government that the files you identified do not open for reasons you have been unable to determine. Please note that without additional information, it is unclear to the government whether re-producing the files already produced will resolve the issue.*

13. USCP time-and-attendance and physical-access-control records for Kerkhoff and Dickert. We have the government's summary but not source(s) of it. For both Shauni Kerkhoff and Daniel Dickert, we request the native physical-access-control badge-reader logs with the complete field set—badge/employee ID, reader ID and location, timestamp with time zone

and stated precision, in/out direction, grant/deny result, system of record, and any audit or edit logs—together with the export query parameters and the identity of the person who ran the pull. We also request both individuals' native USCP time-and-attendance records (time cards) for January 5 and 6, 2021. To date we have received these records only for Kerkhoff; we have nothing comparable for Dickert, whose January 5–6 shift assignment is directly at issue given that we understand that he often worked overnight. Please produce Dickert's time cards and badge-swipe records for January 5 and 6, 2021. As with our other requests, the window for the badge-reader logs is December 24, 2020 through January 21, 2021, to conform to the Verizon request at ¶8.B.3. The government's production of a summary reflects that it has access to the underlying source records.

   a. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

14. The GrayKey extraction of Kerkhoff's iPhone 12 Mini. We request the extraction itself in native format with hash values, together with: the extraction type (BFU/AFU/full-file-system, and logical versus physical); the tool and version; the date; the examiner's identity and notes; the device chain of custody; the consent form or warrant authorizing the extraction and its stated scope; any filter, search-term, or responsiveness protocol applied before production, including who set those parameters and at whose direction; and confirmation whether more than one extraction was performed. This supplements ¶8.A.1.

    a. *We object to this request. The information sought is not discoverable under applicable law or rule. It is not exculpatory, does not constitute Brady or Giglio material, and is not otherwise subject to disclosure. The request also seeks information that is overly private, intrusive, and irrelevant to any issue in the case. Accordingly, the United States will not produce the requested information.*

15. The message-production methodology and the completeness gap. The message content produced to date is internally inconsistent. Some hours reflect multiple parties (including Dickert's family and others), while other hours reflect only the Dickert thread, which is not what a complete extraction produces. Rather than simply request additional messages, we request the government's methodology: (a) the complete message store for the window, unfiltered; (b) a withholding log for any message content not produced; (c) a production index mapping each Bates range of message content to its source extraction and export; (d) every filtering criterion applied, by whom, and at whose direction; and (e) a direct answer explaining the inconsistency described above.

    a. *Case file 174A-WF-4160602, serial 279 documents the review of Kerkhoff's device and the extraction of communications between Kerkhoff and Dickert on January 4-6 and is attached to a supplemental EC being produced under cover of this letter in response to this request.*

16. Apple ID [redacted] (DSID 1301441175). Apple's Account Details return, produced in this matter, reflects subscriber and configuration data only—not content—and shows Advanced Data Protection off (placing iCloud Photos, Drive, Notes, Contacts, Calendars, and Mail within Apple's reach), Find My Friends active, a second line at 614-794-2772, a temple.edu email, and eleven private-relay addresses. Because the Stored Communications Act bars a defense subpoena to Apple for content, we request that the government produce each of the following: (a) an inventory of all legal process served on Apple in this investigation—preservation letters, subpoenas, § 2703(d) orders, and warrants—with dates, the accounts and identifiers covered, the scope, and what was returned; and (b) all Apple returns in the government's possession, in native form, including any content returns and any fields withheld from what we received; (c) a § 2703(f) preservation letter to Apple for DSID 1301441175, issued immediately, with written confirmation of its date and scope and renewed before it lapses; (d) by warrant, for the window, the iCloud Photos library, Drive, Notes, Contacts, Calendars, and Mail; (e) Find My, Find My Friends, and location-sharing data, as a potential independent location source for the hours in dispute; (f) the Messages in iCloud container, and, if Apple states it cannot decrypt it, Apple's written statement to that effect; (g) the historical account configuration from Apple — when iCloud Backup was enabled and disabled, and whether backups covering January 2021 exist or existed on Apple's servers (our return is a 2025–26 snapshot and does not speak to the configuration then); (h) the Apple ID device list for the window, with serials, IMEIs, models, and OS versions; (i) Apple ID sign-in and IP access logs for the window; and (j) subscriber and carrier records for [redacted] for December 24, 2020 through January 21, 2021 — the same window as our ¶8.B.3 request—and whether the additional email identities anchor separate accounts or communications; (k) state whether the government sought Kerkhoff's consent to iCloud content, whether her consent to the handset extraction extended to it, and production of the consent form; and (l) as to any item above the government declines to produce, that the government state its position in writing and the basis for it.

a. *You have requested "an inventory of all legal process served on Apple in this investigation—preservation letters, subpoenas, § 2703(d) orders, and warrants—with dates, the accounts and identifiers covered, the scope, and what was returned." The government served a preservation letter and a subpoena on Apple. The details of those are found at 2660-WF-3366725-SHAUNI_KERKHOFF Serial 7 and Serial 38. The government did not serve Apple with any § 2703(d) orders or search warrants pertaining to Kerkhoff.*
b. *You have requested "all Apple returns in the government's possession, in native form, including any content returns and any fields withheld from what we received." These materials have already been provided in 2660-WF-3366725-SHAUNI_KERKHOFF Serial 38.*

c. *You have requested that the government immediately issue "a § 2703(f) preservation letter to Apple for DSID 1301441175." There is no legal or factual basis for the government to do as requested; Kerkhoff is no longer a person of interest in this investigation.*
d. *You have requested that the government issue "by warrant, for the window, the iCloud Photos library, Drive, Notes, Contacts, Calendars, and Mail; ... Find My, Find My Friends, and location-sharing data, as a potential independent location source for the hours in dispute; ... the Messages in iCloud container, and, if Apple states it cannot decrypt it, Apple's written statement to that effect; ... the historical account configuration from Apple — when iCloud Backup was enabled and disabled, and whether backups covering January 2021 exist or existed on Apple's servers (our return is a 2025–26 snapshot and does not speak to the configuration then); ... the Apple ID device list for the window, with serials, IMEIs, models, and OS versions; ... Apple ID sign-in and IP access logs for the window; and ... subscriber and carrier records for* [redacted] *for December 24, 2020 through January 21, 2021 — the same window as our ¶8.B.3 request— and whether the additional email identities anchor separate accounts or communications." There is no legal or factual basis for the government to do as requested; Kerkhoff is no longer a person of interest in this investigation.*
e. *You have requested that the government "state whether [it] sought Kerkhoff's consent to iCloud content, whether her consent to the handset extraction extended to it, and production of the consent form." Kerkhoff provided consent to the FBI to image her iPhone and to viewing content on her laptop. The government did not request consent to access any iCloud account of Kerkhoff's. See 2660-WF-3366725-SHAUNI_KERKHOFF Serial 62 and Serial 70.*

17. Nest footage for the January 6, 2021 8:00 a.m. window (321 5th Street). On completing our review of the Nest videos from 321 5th Street, we found that no footage was produced for the 8:00 a.m. window on January 6, 2021. In its place is a file named "2021-01-06 08-00 Clip (January 10 2021 at 800 AM).mp4," which is in fact January 10 footage — the clear, sunny conditions do not match the overcast skies in every other January 6 video from this address. We could not locate the genuine January 6, 8:00 a.m. clip anywhere in the production. If it was not produced, please produce it or confirm its absence; if we are mistaken and it exists under another name, please identify it. **Please respond as to this item by August 21, 2026.**
    a. As stated in our email of August 21, 2026: We have provided in discovery all the videos provided to the FBI by the owner of the Nest camera at issue and this is documented in 266O-WF-3366725, serial 44. We acknowledge that this particular file appears to be from a different date, but do not have further information to provide.

Please let us know if you have any questions regarding our responses to your correspondence.

Sincerely,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Stuart Allen*
STUART D. ALLEN
Assistant United States Attorneys
United States Attorney's Office
Washington, D.C.
National Security Section
202-252-7794
Stuart.Allen@usdoj.gov